IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANIEL A. LARSELL,                          6:15-CV-01665-BR

      Plaintiff,                          OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

      Defendant.


SHERWOOD J. REESE
DREW L. JOHNSON
170 Valley River Dr.
Eugene, OR 97401
(541) 434-6466

      Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**ERIN F. HIGHLAND**
Special Assistant United States Attorney
701 Fifth Avenue, Ste. 2900 M/S 221 A
Seattle, WA 98104
(206) 615-2531

       Attorneys for Defendant


**BROWN, Judge.**

Plaintiff Daniel A. Larsell seeks judicial review of a final decision of the Commissioner of the Social Security Admini-stration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further proceedings.


## ADMINISTRATIVE HISTORY

Plaintiff filed a protective application for DIB on June 6, 2011, alleging a disability onset date of April 16, 2009. Tr. 126-32, 143.[1] Plaintiff's application was denied initially on November 23, 2011, and on reconsideration on July 5, 2012.

---

[1] Citations to the official transcript of record filed by the Commissioner on January 11, 2016, are referred to as "Tr."

2 - OPINION AND ORDER

Tr. 77-81, 84-87.  An Administrative Law Judge (ALJ) held a
hearing on September 11, 2013.  At the hearing Plaintiff was
represented by an attorney.  Plaintiff and a vocational expert
(VE) testified at the hearing.  Tr. 11.

The ALJ ordered the following post-hearing examinations of
Plaintiff:  a neuropsychological evaluation by Ben Kessler,
Psy.D., on October 23, 2013; an opthalmological examination by
John Lee, M.D., on November 8, 2013; and a musculoskeletal
examination  by Cory Maughn, D.O., on November 9, 2013.

The ALJ issued her decision on February 14, 2014, in which
she found Plaintiff is not disabled and, therefore, is not
entitled to benefits.  Tr. 11-18.  Pursuant to 20 C.F.R.
§ 404.984(2) that decision became the final decision of the
Commissioner on July 6, 2015, when the Appeals Council denied
Plaintiff's request for review.  Tr. 1-3.  *See Sims v. Apfel*, 530
U.S. 103, 106-07 (2000).


<u>**BACKGROUND**</u>

Plaintiff was born in December 1949 and was fifty-nine years
old on his alleged onset date.  Tr. 53, 143.  He earned a degree
in accounting from Oregon State University and is certified as a
tax preparer.  Tr. 148.  Plaintiff only has past relevant work
experience as an accountant.  Tr. 17.  Although Plaintiff worked
after his alleged disability onset date, the ALJ found that work

3 - OPINION AND ORDER

did not rise to the level of substantial gainful employment.
Tr. 13.

Plaintiff alleges disability due to diabetes, heart problems, vision impairment, high blood pressure, depression, swollen feet, mental confusion, memory problems, and intestinal problems.  Tr. 53.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 13-17.


## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

**DISABILITY ANALYSIS**

**I.   The Regulatory Sequential Evaluation**

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R.

6 - OPINION AND ORDER

§ 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff met the insured status requirements and has not engaged in substantial gainful activity after his April 16, 2009, alleged onset date.  Tr. 13.

At Step Two the ALJ found Plaintiff has the severe impairments of cervical spondylosis, lumbar spondylosis, type II diabetes mellitus, obesity, hypertension, coronary artery disease, and angina pectoris.  Tr. 13.  The ALJ found Plaintiff's impairment of mild depression is nonsevere.  Tr. 13.

At Step Three the ALJ concluded Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 14.

The ALJ found Plaintiff has the RFC to perform light work with the following limitations:  He can stand and walk in combination for six hours and can sit for at least six hours out of an ordinary work day; he can lift 20 pounds occasionally and 10 pounds frequently; he cannot climb ladders, ropes, or scaffolds; he can frequently climb ramps and stairs, stoop, crouch, kneel and crawl; and he should not be exposed to hazards that require a quick response.  Tr. 14-15.

At Step Four the ALJ found Plaintiff is able to perform his past relevant work as an accountant.  Tr. 17.

Accordingly, the ALJ found Plaintiff is not disabled. Tr. 17.

## DISCUSSION

Plaintiff contends the ALJ erred when she (1) failed at Step Two to include Plaintiff's edema as a severe impairment, (2) failed to address Plaintiff's alleged vision impairment, (3) gave little weight to the opinion of examining physician Dr. Maughn, (4) did not give clear and convincing reasons for rejecting Plaintiff's testimony, and (5) found Plaintiff retains the ability to perform his past work as an accountant.

**I.    The ALJ did not err at Step Two.**

Plaintiff contends the ALJ erred at Step Two when she failed to include Plaintiff's edema as a severe impairment.

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). *See also Ukolov v. Barnhart*, 420 F.3d 1002 at 1003 (9th Cir. 2005). The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R.

§§ 404.1521(a), (b).  Such abilities and aptitudes include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.  *Id.*  Conversely, an impairment is not severe if it "has no more than a minimal effect on the ability to do basic work activities."  *Id.  See also* SSR 96-3p.

Dr. Douglas Thayer, M.D., Plaintiff's primary treating physician, first diagnosed "2+ pitting edema in the ankles" on August 7, 2008, and continued to observe and to diagnose "significant" edema in Plaintiff's ankles.  Tr. 227-28, 235-36, 356-58, 368.  Dr. Daniel Lincoln, M.D., an examining physician, also observed "2+ pitting edema to the knees" in his May 12, 2012, evaluation of Plaintiff.  Tr. 348.  Dr. Maughn examined Plaintiff on November 9, 2013, and found Plaintiff had "2+ pitting edema in his bilateral lower extremities extending to the mid shin."  Tr. 407.  Neither Dr. Lincoln nor Dr. Maughn specifically diagnosed Plaintiff with edema or included it as a factor in their assessment of Plaintiff's limitations.  The medical records beginning in 2008 attributed Plaintiff's edema to his medications for hypertension and diabetes.  Tr. 228, 235, 241, 245, 380.  Plaintiff testified he had "tremendous water

10 - OPINION AND ORDER

retention" in his feet "maybe once a month," but he stated he took water pills and elevated his feet to address these symptoms. Tr. 40.

The ALJ specifically addressed the swelling in Plaintiff's legs at Step Two and concluded:

> Plaintiff] testified that his legs swell and he needs to elevate them when seated. This requirement is not evident by or supported in the medical record. There is nothing to medically demonstrate that the use of compression stockings is not an adequate measure.

Tr. 15. The listings of impairments characterizes edema as a sign of other impairments such as chronic heart failure. *See* 20 C.F.R. pt. 404, Subpt. P. App'x 1, §§ 4.00D2, 4.02. Thus, edema can establish the existence of an impairment, but it is not an impairment itself. *Id.* The ALJ, therefore, did not find Plaintiff's edema to be a severe impairment.

Even if the ALJ erred by failing to find edema to be a severe impairment, the Ninth Circuit has held when the ALJ has resolved Step Two in a claimant's favor, any error in failing to designate a specific impairment as severe does not prejudice a claimant at Step Two. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)(any error in omitting an impairment from the severe impairments identified at Step Two was harmless when Step Two was resolved in claimant's favor).

On this record the Court concludes the ALJ did not err at Step Two because she provided legally sufficient reasons

11 - OPINION AND ORDER

supported by substantial evidence in the record for finding

Plaintiff did not have the severe impairment of edema.

## II. The ALJ erred by failing to address the medical evidence and to develop the record fully regarding Plaintiff's alleged vision impairment.

Plaintiff contends the ALJ erred when she failed to address

Plaintiff's testimony regarding vision problems and the

ophthalmological evaluation of Plaintiff by Dr. Lee.

The Commissioner bears the burden of developing the record.

*Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001). When

important medical evidence is incomplete, the ALJ has a duty to

recontact the provider for clarification. 20 C.F.R.

§§ 404.1527(c)(2). *See also Garcia v. Comm'r. of Soc. Sec.*, 768

F.3d 925, 930 (9th Cir. 2014)(ALJ always has a "special duty to

fully and fairly develop the record" even when claimant is

represented by an attorney)(citing *Celaya v. Halter*, 332 F.3d

1177, 1183 (9th Cir. 2003)).

"Critical to the fair and effective operation of the system

for distributing social security benefits based on disability is

the gathering and presentation of medical evidence." *Reed v.*

*Massanari*, 270 F.3d 838, 841 (9th Cir. 2001)(citation omitted).

Although the burden to demonstrate a disability lies with the

claimant, "it is equally clear the ALJ has a duty to assist in

developing the record." *Id.* (quotation omitted; citing 20 C.F.R.

§§ 404.1512(d)-(f)).

"One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination, *i.e.*, 'a physical or mental examination or test purchased for [a claimant] at [the Social Security Administration's] request and expense.'" *Id*. (quoting 20 C.F.R. §§ 404.1519, 416.919). "[T]he Commissioner has broad latitude in ordering a consultative examination." *Id*. at 842 (quotation omitted). Although the government is not required to bear the expense of an examination for every claimant, some cases "normally require a consultative examination," including cases in which "additional evidence needed is not contained in the records of [the claimant's] medical sources" and cases involving an "ambiguity or insufficiency in the evidence [that] must be resolved." *Id*. (quoting 20 C.F.R. §§ 404.1519a(b)(1),(4)).

At the hearing Plaintiff testified he had a vision impairment that would interfere with his ability to work and that he was unable to read small print without holding the writing within 8-10 inches of his face. Tr. 27, 34. Lay-witness Eugenie Taylor, a close friend of Plaintiff who Skypes almost daily with him, stated in a letter submitted through Plaintiff's counsel that Plaintiff's poor eyesight "forces him to lean in and sit improperly to be able to read his computer screen." Tr. 191. The ALJ did not address Taylor's statement other than to note that "Skype requires the use of a computer monitor, not

dissimilar to spending time working with a computer."  Tr. 15.
The ALJ does not address in his opinion the statements by either
Plaintiff or Taylor regarding Plaintiff's alleged vision
impairment.

Dr. Gale Smolen, M.D., an examining psychiatrist, noted in
her May 4, 2012, report that Plaintiff "is almost legally blind"
even with glasses and indicated an Axis III diagnosis of vision
impairment.  Tr. 342, 344.  The ALJ, however, did not address
Dr. Smolen's finding.

The ALJ ordered a post-hearing ophthalmological examination,
which was performed on November 8, 2013, by Dr. Lee.  The record
includes an examination report consisting of medical
hieroglyphics without a narrative explanation setting out
Dr. Lee's opinion or conclusions.  Tr. 389-91.  In any event, the
ALJ does not address Dr. Lee's report in her opinion.

In her Response to Plaintiff's Opening Brief the
Commissioner interpreted Dr. Lee's report as reflecting Dr. Lee
found Plaintiff did not have any acute vision problems and that
any of Plaintiff's vision problems could be corrected with  new
glasses.  Plaintiff, however, points out that the report is
"illegible" and cannot be properly evaluated.  The Court agrees.
As noted, the ALJ must develop the record when there is ambiguous
evidence or when the record is inadequate to allow for proper
evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885

(9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).  Thus, the Court finds the illegible report is not sufficient to satisfy the AJL's duty to develop the record as to Plaintiff's alleged vision impairment.

Although the ALJ found Plaintiff is not disabled and is able to perform his past relevant work as an accountant, the ALJ did not make any determination regarding Plaintiff's alleged vision impairment that is supported by the record; *i.e.*, whether it constitutes a severe impairment (Step Two) and/or how such an impairment could affect Plaintiff's ability to perform his past relevant work.  Plaintiff's testimony and Dr. Smolen's report indicate Plaintiff's vision constitutes a significant functional limitation.  Although the court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision (*Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)), the Court is "constrained to review the reasons the ALJ asserts."  Here the ALJ did not provide any reasons for failing to address the opinions of Dr. Lee or Dr. Smolen.  *See Connett v. Barnhart,* 340 F.3d 871, 874 ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.").  *See also Marsh v. Colvin,* 792 F.3d 1170, 1172 (9th Cir. 2015)(court cannot affirm the agency on a ground not invoked by the ALJ without violating the *Chenery* rule)(citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

On this record the Court concludes the ALJ erred when she failed to provide legally sufficient reasons supported by substantial evidence in the record for failing to address and to develop the record fully as to Plaintiff's alleged vision impairment.

**III. The ALJ did not err when considering Dr. Maughn's opinion.**

Plaintiff contends the ALJ erred when she rejected the opinion of Dr. Maughn, an examining physician, that Plaintiff has notable objective limitations in neck flexion.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*,881 F.2d 747, 751 (9th Cir. 1989)).  Legitimate reasons for rejecting a physician's opinion may include reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

Plaintiff was involved in an automobile accident on July 1, 2011.  He followed up with his treating physician, Dr. Thayer, on July 11, 2011.  At that time Dr. Thayer noted Plaintiff had

decreased range of motion of his "head" with full forward
flexion.  Tr. 221-22.  Dr. Thayer diagnosed cervical and thoracic
strain, and prescribed physical therapy.  Tr. 223.  The physical
therapy evaluation on July 18, 2011, indicated Plaintiff was
"sorest in the area of his lower neck at C6-7 on the right."
Tr. 283.  The physical-therapy progress report dated
September 22, 2011, noted Plaintiff was last seen on August 11,
2011, for treatment, but he did not call back for further
treatment.  Tr. 280.  Neither Dr. Thayer nor the physical
therapist stated any opinion regarding Plaintiff's limitations.
A radiology examination on April 26, 2012, by Dr. Victor
Leonardo, M.D., reflected Plaintiff has cervical and lumbar
spondylosis.  Tr. 337-38.  Dr. Lincoln, who examined Plaintiff in
May 2012 regarding neck and back complaints, diagnosed him with
chronic neck and back pain, but Dr. Lincoln found "no
limitations" in Plaintiff's ability to stand, to walk, or to sit.
Dr. Lincoln further indicated Plaintiff has "no limitations" in
the work-place environment, and his "maximum sitting capacity" is
without limitation.  Tr. 346-50.

       As previously noted, following the hearing before the ALJ,
Dr. Maughn conducted a musculoskeletal examination of Plaintiff
on November 9, 2013.  Tr. 405-17.  Dr. Maughn noted Plaintiff's
neck rotation was limited to 15 degrees to the left and
15 degrees to the right, limited in flexion to 15 degrees, and

limited in extension to 15 degrees.  Tr. 407.  Dr. Maughn
diagnosed Plaintiff with "chronic neck pain with x-rays showing
severe spondylosis" and noted Plaintiff has "notable objective
restrictions with range of motion."  Tr. 409.  In his functional
assessment for postural activities, however, Dr. Maughn
indicated:  "Limitations of never with respect to ladders,
scaffolds and ropes.  It is very difficult for [Plaintiff] to
extend, flex or rotate his neck which would make these activities
extremely difficult.  He would have no other limitations with
respect to postural activities."  Tr. 409.  As to workplace
environmental activities, Dr. Maughn concluded:  "[Plaintiff]
would have limitations to working around heights and heavy
machinery due to his decreased range of motion of his neck and
likely decreased reaction time. . . .  He would have no other
limitation with respect to workplace environmental activities."
Tr. 409.  In the check-box portion of his report, however,
Dr. Maughn noted a sitting limitation of four hours in an eight-
hour day.  Tr. 411.

     The ALJ noted Dr. Maughn assessed Plaintiff with notable
objective restrictions with range-of-motion testing and a medium
RFC.  Tr. 16, 309.  The ALJ, however, concluded "[t]here is no
treating source residual functional capacity in the record," and
the ALJ found Dr. Maughn's assessment "did not take into account
pain reasonably associated with the degree of claimant's spinal

disease."  The ALJ, therefore, gave Dr. Maughn's opinion "limited weight."  Tr. 17.

The Court concludes on this record that the ALJ did not err when she gave Dr. Maughn's opinion limited weight because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**IV.  The ALJ did not err when she found Plaintiff's testimony was not credible.**

Plaintiff contends the ALJ erred by failing to provide clear and convincing reasons for finding Plaintiff's testimony was not fully credible.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834

19 - OPINION AND ORDER

(9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

Plaintiff maintained he was unable to work because of pain in his neck that prevented him from looking down to fill out forms, poor vision that impaired his ability to read small print, and swelling of his legs that required elevation. Tr. 39-40, 47.

The ALJ provided several reasons for finding Plaintiff's statements about his limitations, at least those arising from his neck and leg symptoms, were "not entirely credibile."

First, the ALJ found Plaintiff was noncompliant with treatment for his diabetes and that Plaintiff's purported stamina difficulties or concentration were the result of his uncontrolled diabetes.  Tr. 15.  The ALJ may find a claimant's testimony was not credible if the claimant does not follow prescribed treatment "and there are no good reasons for this failure."  SSR 96-7p. *See Tommasetti*, 533 F.3d at 1039 (a claimant's unexplained failure to follow a prescribed treatment recommendation is a relevant credibility consideration).

Here Plaintiff testified he sometimes forgot to take his insulin and pills.  Tr. 43.  Plaintiff also testified he was

noncompliant with his prescribed exercise program because he forgot to exercise.  Tr. 43.  In July 2011 Dr. Thayer stated Plaintiff's control of his hemoglobin as a measure of diabetes was "completely unacceptable."  Tr. 219.  Dr. Thayer noted Plaintiff "does not have much interest in using insulin" and was "not particularly interested" in following Dr. Thayer's suggestion that he eat smaller meals throughout the day as opposed to one large meal.  Tr. 219-20.  In July 2012 Dr. Thayer again noted Plaintiff's diabetes was not adequately controlled. Tr. 357.  In September 2013 Dr. Thayer also stated Plaintiff's diabetes was "poorly controlled" and noted Plaintiff was not eating or taking his insulin regularly.  Tr. 364.  Thus, the Court concludes the ALJ properly discounted Plaintiff's credibility based on his noncompliance with medical treatment.

The ALJ also discounted Plaintiff's credibility based on his participation in daily activities inconsistent with his symptoms and limitations.  Activities are a proper ground for the ALJ to question the credibility of an individual's subjective allegations "[e]ven where those activities suggest some difficulty functioning."  *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

Plaintiff's testimony indicated to a limited extent that he drives, takes care of himself and his pets, does his own shopping, prepares his meals, participates in civil war re-

21 - OPINION AND ORDER

enactments, maintains his yard, and uses the computer daily to
Skype with friends and to play computer games.  Tr. 155-58.
Plaintiff's daughter, Patricia Adams, indicated in her Third-
Party Function Report dated August 12, 2011, that Plaintiff "is
fairly sedentary" and spends most of his day sleeping or watching
TV or on the computer.  Tr. 163.  Dr. Smolen stated in his report
that Plaintiff was able to perform the routine activities of
daily living albeit at a slow pace.  Tr. 342.  The ALJ also noted
Plaintiff had adopted a "sedentary lifestyle."  Tr. 16.  Thus,
the Court finds the ALJ reasonably concluded Plaintiff's daily
activities were inconsistent with his complaint of disabling
symptoms and limitations.

    The ALJ also concluded Plaintiff's allegations were
inconsistent with the medical evidence.  The ALJ may not reject a
claimant's testimony merely because the degree of symptoms
alleged is not substantiated by objective medical evidence.
*Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)(lack of
medical evidence cannot form the sole basis for discounting pain
testimony, but is a factor that the ALJ can consider in his
credibility analysis).  Medical evidence, however, is still a
relevant factor in determining the severity of a claimant's pain
and its disabling effects.  *Rollins v. Massanari*, 261 F.3d 853,
857 (9th Cir. 2001).

    Here, as a basis for her conclusion that the medical

22 - OPINION AND ORDER

evidence did not substantiate Plaintiff's statements, the ALJ
cited Dr. Maughn's opinion that Plaintiff could perform medium-
level work and Dr. Lincoln's report in which he assessed
Plaintiff with "no workplace limitations."  Tr. 16, 350, 405.

Finally, the ALJ found Plaintiff stopped working for reasons
other than his disability.  Tr. 16.  The ALJ may assign less
weight to a claimant's testimony when the claimant stopped
working for reasons other than disability.  *Bruton v. Massanari*,
268 F.3d 824, 833 (9th Cir. 2001).  The ALJ noted Plaintiff
stopped working as a tax preparer when the company for which he
was working did not ask him back.  Tr. 16.  Plaintiff himself
indicated he did not return to his last job after the 2011 tax
season because it "wasn't worth it," he got ill from contact with
the children of clients, he had to work extra hours and to study
on his own without getting paid, and he had to pay for his own
licensing.  Tr. 394.

On this record the Court concludes the ALJ provided legally
sufficient reasons supported by substantial evidence in the
record for rejecting Plaintiff's testimony as to the limiting
effects of his impairments.  The Court, therefore, concludes the
ALJ did not err when she rejected Plaintiff's testimony.

**V.  The ALJ erred when she found Plaintiff was able to perform
his past work.**

Plaintiff contends the ALJ erred at Step Four when she found
Plaintiff retains the ability to perform his past work as an

23 - OPINION AND ORDER

accountant.  Plaintiff contends the ALJ failed to consider Plaintiff's neck pain, vision, and edema impairments.

As previously noted, the Court has concluded the ALJ did not err when she gave limited weight to Dr. Maughn's post-hearing opinion and rejected Plaintiff's symptom testimony at the hearing because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.  The Court has also concluded the ALJ did not err when she did not include Plaintiff's edema as a severe impairment because she provided legally sufficient reasons supported by substantial evidence in the record for doing so.

Even though the ALJ did not include in her evaluation of Plaintiff's RFC certain limitations that Plaintiff alleged in his testimony at the hearing and that Dr. Maughn set out in his post-hearing opinion, the ALJ included some of those limitations in her hypotheticals posed to the VE.  For example, the ALJ included a limitation for following simple instructions.  The VE stated Plaintiff would not be able to perform his past work as an accountant with the simple-instruction limitation because an accountant is a highly skilled job.  Tr. 49.  Without that limitation, however, the VE stated Plaintiff would be able to perform his past work as an accountant.  Tr. 50.  The ALJ then modified her hypothetical to include a requirement that Plaintiff elevate his feet to waist height for an entire day once a month

and added that Plaintiff is unable to hold his head in a forward
flexed position for more than 30% of the time.  The VE stated
Plaintiff's past work as an accountant would be "ruled out" with
those restrictions.  Tr. 50.

Although the ALJ included limitations that she properly
rejected in her hypotheticals to the VE, the ALJ relied on her
own evaluation of Plaintiff's RFC (*i.e.*, that Plaintiff is able
to perform light work) when determining whether Plaintiff is able
to perform past relevant work.  The ALJ also noted her evaluation
was  less restrictive than Dr. Maughn's post-hearing assessment
(a "medium residual function capacity").  *See* SSR 96-8p.  Tr. 17.
The ALJ ultimately concluded Plaintiff is capable of performing
his past relevant work as an accountant on the ground that the
ALJ's evaluation of Plaintiff's RFC does not preclude that work.
Tr. 17.

As noted, however, the Court has concluded the ALJ erred
when she did not address nor develop fully the record regarding
Plaintiff's allegation as to his vision impairment.  If the ALJ
fully and properly considered that limitation, it could affect
the ALJ's determination as to whether Plaintiff has the ability
to perform his past relevant work as an accountant.  The Court,
therefore, concludes the ALJ erred when she determined on an
incomplete record that Plaintiff is able to perform his past
relevant work as an accountant.

## REMAND

The Court must determine whether to remand this matter for further proceedings or to remand for the calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

The Court concludes on this record that a remand for further proceedings consistent with this Opinion and Order is required to

26 - OPINION AND ORDER

permit the ALJ to determine whether Plaintiff has a vision impairment and, if so, whether such impairment is severe, how such an impairment is severe, how such an impairment would impact Plaintiff's ability to perform his past relevant work as an accountant, and whether such an impairment renders Plaintiff disabled.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 30th day of September, 2016.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

27 - OPINION AND ORDER